TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00253-CV






James A. Hopkins and Jean C. Hopkins, Appellants


v.


The State of Texas and Janoe Truck Sales and Service, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-01-000504, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 James A. Hopkins and Jean C. Hopkins (collectively "Hopkins") (1) sued Janoe Truck
Sales and Service, Inc. ("Janoe Truck") seeking to establish ownership of a .451-acre tract of land
in Travis County. Hopkins brought a separate inverse condemnation action against the State of
Texas seeking compensation for .13 acres of the .451-acre tract taken by the State for a drainage
easement. The two suits were consolidated, and the trial court rendered a take-nothing summary
judgment in favor of the State and Janoe Truck. By three issues Hopkins contends that (1) the trial
court erred by granting summary judgment on claims that were not part of the State and Janoe
Truck's motion; (2) summary judgment was not proper as to the claims that were included in the
motion; and (3) the trial court improperly sustained the State and Janoe Truck's objections to his
summary-judgment evidence. We will affirm the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 In February 2001, Hopkins filed a suit to quiet title and a trespass-to-try-title action
against Janoe Truck (Cause No. GN1-00504) seeking to resolve a dispute regarding ownership of
.451 acres of land (the "Disputed Property") located to the north of what both parties agree is
Hopkins's land and to the south of what both parties agree is Janoe Truck's land. In April 2001,
Hopkins filed an inverse condemnation action against the State (Cause No. GN1-01295) seeking
damages resulting from the State's taking of .13 acres of the Disputed Property for use as a drainage
easement. Because the issue of whether Hopkins owned the Disputed Property was central to both
causes of action, Janoe Truck filed a motion to consolidate. (2) The district court subsequently ordered
the cases consolidated for all purposes under Cause No. GN1-00504. The State and Janoe Truck
filed a joint traditional and no-evidence motion for summary judgment contending that, as a matter
of law, Hopkins did not own the Disputed Property. The district court granted the motion for
summary judgment and subsequently rendered judgment that Hopkins take nothing by way of his
claims and causes of action against the State and Janoe Truck, all of which depended on Hopkins's
proving that he owned the Disputed Property. This appeal followed.


Hopkins's Property

 In 1947, Gladys Beck, individually and as independent executrix of the estate of
W. H. Beck, joined by Walter H. Beck, Jr. and his wife Jane G. Beck ("Beck"), conveyed 86.08 acres
of land in Travis County, Texas (the "Original Property") to J. Frank Dobie. The northern border
of the Original Property is described in the field notes as "the average of the meanders of a pasture
branch" and was the boundary between the Original Property and property then owned by Janoe
Truck's predecessors in interest. In 1962, Dobie conveyed a one-acre east-west rectangular tract in
the middle of the Original Property to Hopkins (the "First Conveyance"). (See Figure 1.) In 1970,
the Estate of J. Frank Dobie conveyed two additional tracts of land out of the Original Property to
Hopkins (the "Second Conveyance"). The Second Conveyance consisted of 1.25 acres south of and
adjacent to the First Conveyance, and 5.56 acres north of and adjacent to the First Conveyance. The
metes and bounds description in the Second Conveyance indicates that the northern boundary of the
5.56-acre tract is south of the northern boundary of the Original Property. The northern boundary
of the 5.56-acre tract begins at "Point B," which is approximately 60 feet south of an iron stake
located at the west end of the northern boundary of the Original Property. From "Point B," the
surveyor made three specific calls, two of which are also south of the northern boundary of the
Original Property and the third of which is a point on the east end of the northern boundary of the
Original Property. The northern boundary of the 5.56-acre tract consists of a line joining each of
these points. Consequently, the northern boundary for the 5.56-acre tract begins at a point 60 feet
south of the west end of the northern boundary of the Original Property, and remains to the south
until it rejoins the northern boundary of the Original Property at its easternmost point. The Disputed
Property is a .451-acre tract lying between the two boundaries. (3)

Figure 1 (not to scale)


Janoe Truck's Property

 In 1957, Clara Simpson conveyed a 20.9-acre tract of land adjacent to the northern
boundary of the Original Property to O. D. and Stella Denson. In 1972, the Densons conveyed a
portion of that land to Joe D. Parmer and Bret Parmer. In 1982, the Parmers conveyed 5.95 acres
of their land to Tom D. Janoe (Janoe). The 5.95 acres lies adjacent to the northern boundary of the
Original Property, which is also the northern boundary of the Disputed Property. In 1982, Janoe also
acquired a quitclaim deed to the Disputed Property from the Parmers. (4) In 1983, Janoe platted his
property and included the Disputed Property in his plat. In 1986, Janoe conveyed the platted tract
(approximately 6.39 acres) to Janoe Truck.


The State's Involvement

 In the late 1980s, the State began projects to improve IH-35 and re-route portions of
Slaughter Lane and Congress Avenue. The Janoe Truck and Hopkins properties are adjacent to, and
east of, IH-35. Consequently, the State sought to acquire drainage easements over portions of
Hopkins's and Janoe Truck's properties. In 1991, Janoe Truck provided the State a permanent
drainage easement over .313 acres of its property, .13 acres of which was embedded within the
Disputed Property.

 In 1990, the State commenced condemnation proceedings against Hopkins (the
"Condemnation Action") seeking to acquire a drainage easement over .242 acres of Hopkins's 5.56-acre tract. The .242 acres is adjacent to, and south of, the .313 acre easement acquired from Janoe
Truck. In 1991, the Special Commissioners awarded Hopkins $35,462 as compensation for the .242-acre easement and to compensate him for the diminution in value of the remainder of his property
resulting from the taking. Hopkins filed objections to the award, and the Condemnation Action
remained pending in the County Court at Law No. 1 of Travis County for almost ten years. In
December 2000, Hopkins raised an issue regarding the size of his property affected by the taking. 
Relying on the "strip and gore" doctrine, Hopkins claimed ownership of the Disputed Property. 
Consequently, Hopkins contended that the remainder property affected by the easement was 8.271
acres as compared to the State's position that the condemnation affected only 7.81 acres. In February
2001, Hopkins filed First Amended Objections to the Award of the Special Commissioners alleging
that he owned the Disputed Property and asserting that the size of the property damaged by the taking
of the .242-acre easement was 8.271 acres. (5)

 Hopkins moved to transfer the case from the county court at law to district court on
the ground that the case involved title to land. In February 2001, the county court at law transferred
the Condemnation Action to the 98th Judicial District Court of Travis County, where it was assigned
Cause No. GV100300. In January 2003, Hopkins filed "Second Amended Objections to the Award
of the Special Commissioners and Cross Claims" asserting counter-claims against the State for
nuisance and violations of the Texas Water Code. The case was tried to a jury in February 2003. 
At the conclusion of Hopkins's evidence, the district court granted the State's motion for a directed
verdict on Hopkins's counter-claims. The case was then submitted to the jury to determine the fair
market value of the .242-acre easement interest taken. The jury was also charged with determining
the decrease in fair market value of "the remainder of the 7.81 acres of the Condemnees's land,
immediately after the taking on August 21, 1991, taking into consideration the effect of the
condemnation on the value of the remaining property." The trial court refused Hopkins's request
to instruct the jury that the size of the property affected by the easement was 8.271 acres. The jury
returned a verdict awarding Hopkins damages. The trial court rendered a final judgment on the
jury's verdict and awarded Hopkins damages and pre-judgment interest. Hopkins appealed, and this
Court affirmed the judgment with the exception of the pre- and post-judgment interest calculations
and the award of costs. See Hopkins v. State, No. 03-03-00499-CV, 2006 Tex. App. LEXIS 3530
(Tex. App.--Austin Apr. 27, 2006, pet. denied) (mem. op.).


Hopkins's Suits Against the State and Janoe Truck

 Hopkins filed his suits against the State and Janoe Truck while the Condemnation
Action was pending. In his inverse condemnation case against the State, Hopkins claimed that he,
rather than Janoe Truck, owned the Disputed Property and asserted that the State improperly
acquired the .13-acre easement embedded in the Disputed Property from Janoe Truck rather than
from him. Hopkins sought compensation from the State for the taking. Hopkins also sought
damages resulting from the State's releasing water from drainage structures upstream onto the
Disputed Property. 

 In his suit against Janoe Truck, Hopkins sought to quiet title to the Disputed Property. 
Hopkins asserted that he owned the Disputed Property through application of the "strip and gore"
doctrine. In the alternative, Hopkins included a trespass-to-try-title action against Janoe Truck
asserting ownership of the Disputed Property through adverse possession or "boundary by
acquiescence or agreement." Hopkins requested an adjudication that he owned the Disputed
Property and sought to remove an alleged cloud on his title created by Janoe Truck's conveyance of
.13 acres of that property to the State for the drainage easement.

 The State and Janoe Truck filed a joint traditional and no-evidence motion for
summary judgment contending that, as a matter of law, Hopkins could not prevail on his claim to
own the Disputed Property. The State and Janoe Truck first asserted that the doctrines of res judicata
and/or collateral estoppel barred his claim to ownership because Hopkins had unsuccessfully
litigated that issue in the Condemnation Action. The State and Janoe Truck further contended that,
as a matter of law, Hopkins could not establish ownership to the Disputed Property by application
of the "strip and gore" doctrine or pursuant to adverse-possession statutes that require the claimant
to hold property under title, color of title, registered deed, or recorded instrument. See Tex. Civ.
Prac. & Rem. Code Ann. §§ 16.024 (three-year title or color-of-title statute), .025 (five-year
registered deed statute), .028 (25-year recorded instrument statute) (West 2002). The State and Janoe
Truck also asserted that they were entitled to summary judgment with regard to Hopkins's claim
of ownership through boundary by acquiescence or agreement and adverse possession under the
ten- and 25-year bare possession statutes. See id. §§ 16.026 (ten-year bare possession statute),
.027 (25-year bare possession statute) (West 2002). Without stating the grounds on which it relied,
the district court granted the motion for summary judgment. The court then rendered a take nothing
judgment in the State's and Janoe Truck's favor on all claims Hopkins asserted against them in the
consolidated action. Hopkins perfected this appeal.


STANDARD OF REVIEW

 We review the trial court's summary-judgment rulings de novo. Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis
for its summary judgment, we must affirm if any of the grounds presented to the district court in the
motion are meritorious. See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216
(Tex. 2003); Pickett v. Texas Mut. Ins. Co., 239 S.W.3d 826, 840 (Tex. App.--Austin 2007, no pet.).

 The party moving for a traditional summary judgment under rule 166a(c) must
demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). When a defendant moves for summary judgment, he must either conclusively negate
at least one essential element of each of the plaintiff's causes of action or conclusively establish
each element of an affirmative defense. Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911
(Tex. 1997). When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and indulge every reasonable inference and resolve all doubts in his favor. Id.; Nixon,
690 S.W.2d at 549.

 Under rule 166a(i), a movant must assert that, after adequate time for discovery, there
is no evidence of one or more essential elements of a claim or defense on which an adverse party
would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); see Fort Worth Osteopathic Hosp.,
Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). To defeat a rule 166a(i) summary-judgment motion,
the nonmovant must produce summary-judgment evidence raising a genuine issue of material fact
as to each challenged element. Tex. R. Civ. P.166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598,
600 (Tex. 2004). A genuine issue of material fact exists if the nonmovant produces more than
a scintilla of evidence establishing the existence of the challenged element. Ford Motor Co.,
135 S.W.3d at 600. More than a scintilla of supporting evidence exists if the evidence would allow
reasonable and fair-minded people to differ in their conclusions. King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 750-51 (Tex. 2003).


DISCUSSION

 By his first issue, Hopkins complains that the trial court granted summary judgment
on claims that were not included in the State and Janoe Truck's joint motion for summary judgment. 
Hopkins asserts that the trial court therefore erred by granting greater relief than the movants
requested in their motion. We disagree with Hopkins's characterization of the trial court's rulings. 
The State and Janoe Truck filed a joint motion for summary judgment as to the issue of Hopkins's
ownership of the Disputed Property. In that motion, the State and Janoe advanced a number of
arguments to support their motion, including that the ownership issue had been previously litigated
and adjudicated against Hopkins and that Hopkins could not, as a matter of law, prevail on any of
the ownership theories--"strip and gore" doctrine, title by acquiescence or agreement, and adverse
possession--advanced in the consolidated action. The trial court granted the joint motion for
summary judgment, agreeing that, as a matter of law, Hopkins could not establish ownership of the
Disputed Property. After the court ruled in their favor on the summary judgment motion, the State
and Janoe Truck filed a motion requesting that the court render a take-nothing judgment against
Hopkins. The court granted the motion and rendered the take-nothing judgment. Hopkins's causes
of action against the State for inverse condemnation, nuisance, and violations of the water code were
predicated on a showing that Hopkins owned the Disputed Property. Moreover, the purpose of his
suit to quiet title and trespass-to-try-title action against Janoe Truck was to obtain an adjudication
that he owned the Disputed Property. Once the issue of ownership of the Disputed Property was
decided against Hopkins, he could not prevail on any of the claims asserted against the State
or against Janoe Truck. The trial court properly granted the State and Janoe Truck's motion for a
take-nothing judgment and rendered judgment against Hopkins. We overrule Hopkins's first issue.

 By his second issue, Hopkins contends that genuine issues of material fact exist with
respect to each of the elements of the theories he relies on to establish ownership of the Disputed
Property. He contends, therefore, that the trial court erred in granting the State and Janoe Truck's
motion for summary judgment on that issue. We review each of the theories Hopkins has advanced
in support of his claim to own the Disputed Property.


"Strip and Gore" Doctrine

 The State and Janoe Truck argued that Hopkins's claim to ownership of the Disputed
Property through application of the "strip and gore" doctrine fails as a matter of law. We agree. The
"strip and gore" doctrine allows for a presumption that a deed conveys a small parcel of land omitted
from the description of the land conveyed if the parcel (1) is small in comparison to the land
conveyed; (2) is adjacent to or surrounded by the land conveyed; (3) belonged to the grantor at the
time of the conveyance; and (4) was of no benefit or importance to the grantor. Alkas v. United Sav.
Ass'n of Tex., Inc., 672 S.W.2d 852, 857 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.). 
However, this presumption applies only when the deed is ambiguous with regard to whether
it conveys the strip at issue. Woolaver v. Texaco, Inc., 594 S.W.2d 224, 225 (Tex. Civ.
App.--Fort Worth 1980, no writ); Miller v. Crum, 314 S.W.2d 389, 395 (Tex. Civ.
App.--Fort Worth 1958, no writ). Furthermore, the presumption does not apply when the grantor
plainly and specifically reserves the strip to himself. Sigmar v. Anderson, 212 S.W.3d 789, 795
(Tex. App.--Austin 2006, no pet.).

 The deed at issue in the present case is not ambiguous. The location of the northern
boundary of the 5.56-acre tract is precisely described; the metes and bounds description recognizes
both the departure from and return to the northern boundary of the Original Property. The deed
evidences Dobie's plain and deliberate intent not to convey, and therefore to reserve ownership of,
the land lying between the northern boundary of the 5.56-acre tract and the northern boundary of the
Original Property--the Disputed Property. Under these circumstances, the "strip and gore" doctrine
does not supply a presumption that Dobie intended to convey the Disputed Property to Hopkins. 
Rather, the conveyance itself conclusively demonstrates that he did not. Hopkins's claim to
ownership through application of the "strip and gore" doctrine fails as a matter of law.


Adverse Possession

 In the alternative, Hopkins claims to have acquired title to the Disputed Property by
adverse possession. In order to defeat the State and Janoe Truck's motion for summary judgment,
Hopkins was required to show that a genuine issue of material fact exists with respect to each of the
elements of at least one of the five Texas adverse-possession statutes: the three-year title or color-of-title statute, the five-year registered deed statute, the 25-year recorded instrument statute, the ten-year
bare possession statute, or the 25-year bare possession statute. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 16.024-.028.


The Three-, Five-, and 25-Year Statutes

 Three of the adverse-possession statutes require that the claimant assert ownership
under title or color of title, a recorded deed, or a recorded instrument. See id. §§ 16.024 (must claim
under title or color of title); .025 (must claim under registered deed); .028 (must claim under
recorded instrument). Section 16.024 of the civil practice and remedies code provides that suit must
be brought against a person who holds property in peaceable and adverse possession under title
or color of title within three years after the day the cause of action accrues. Id. § 16.024. 
Section 16.025 provides that suit must be brought within five years after the day the cause of action
accrues against a person who cultivates the property, pays taxes on the property, and claims the
property under a duly registered deed. Id. § 16.025. Section 16.028 provides that suit must be
brought within 25 years against a person who holds the property in good faith and under a deed or
other instrument purporting to covey the property that is recorded in the deed records of the county
where any part of the real property is located. Id. § 16.028.

 As discussed above, Hopkins cannot rely on the "strip and gore" doctrine to supply
a presumption that his conveyance from Dobie includes the Disputed Property. There is no other
evidence in the record that Hopkins has either a registered deed or a recorded instrument purporting
to convey the Disputed Property to him. Nor is there evidence that he otherwise has "title" or "color
of title" to the Disputed Property as those terms are defined by statute. See id. § 16.021. (6) The
summary judgment record does not include evidence creating a genuine issue of material fact with
respect to at least one element of each of these three adverse-possession statutes. Therefore,
summary judgment against Hopkins on his claims to have acquired the Disputed Property pursuant
to civil practice and remedies code sections 16.024, 16.025, or 16.028 was proper. 


The Ten- and 25-Year Bare Possession Statutes

 Hopkins also claims to have acquired title to the Disputed Property through bare
adverse possession, which does not require that he assert a claim under title, color of title,
a registered deed, or a recorded instrument. See id. § 16.026 (ten-year bare possession statute),
.027 (25-year bare possession statute). To claim adverse possession under civil practice and
remedies code section 16.026, the claimant must prove that he adversely possessed the claimed land
for ten years. To claim adverse possession under section 16.027 of the civil practice and remedies
code, the claimant must prove that he adversely possessed the claimed land for 25 years. Adverse
possession is defined as "an actual and visible appropriation of real property, commenced and
continued under a claim of right that is inconsistent with and is hostile to the claim of another
person." Id. § 16.027. Possession must be "actual, visible, continuous, notorious, distinct, hostile,
and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership
in the occupant." Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990); see also Terrill v. Tuckness,
985 S.W.2d 97, 107 (Tex. App.--San Antonio 1998, no pet.). Moreover, the adverse possession
must be hostile to the rights of the record owner. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.021(1). To survive the State and Janoe Truck's motion for summary judgment, the record had
to contain evidence that raised a fact issue as to whether Hopkins's use of the Disputed Property was
in the nature of activities that constituted adverse possession--that is, that it was an actual and
visible appropriation of the Disputed Property such that the true owner was given notice of a hostile
claim. Rhodes, 802 S.W.2d at 645; Harlow v. Giles, 132 S.W.3d 641, 646 (Tex. App.--Eastland
2004, pet. denied).

 To raise a genuine issue of material fact regarding his claim to have adversely
possessed the Disputed Property, Hopkins relied on his own affidavit. In the affidavit, Hopkins
averred that he kept cows and a horse on the property he purchased from Dobie and that he was
careful to maintain the boundary fencing, including a fence running along the northern boundary of
the Original Property (also the northern boundary of the Disputed Property) that was in place at the
time he purchased his property from Dobie. Hopkins's evidence of his "actual and visible
appropriation" of the Disputed Property consists of using the Disputed Property for grazing cattle
and horses and his repair of a fence that already existed at the time he originally purchased his land. 
Hopkins also averred that, shortly after acquiring the property from Dobie, he had a conversation
with O. D. Denson, the then-owner of land north of the Disputed Property, during which he told
Denson that he owned the Disputed Property. Hopkins and Denson never spoke after that
conversation. Hopkins produced no other evidence of use or appropriation of the Disputed Property.

 Hopkins's affidavit does not create a genuine issue of material fact regarding his
adverse possession of the Disputed Property. The law is well settled that the mere grazing of land
incidentally enclosed by a fence created by others cannot support a claim of adverse possession. 
McDonnold v. Weinacht, 465 S.W.2d 136, 142 (Tex. 1971); West Prod. Co. v. Kahanek,
121 S.W.2d 328, 331 (Tex. 1938); Mohnke v. Greenwood, 915 S.W.2d 585, 593 (Tex.
App.--Houston [14th Dist.] 1996, no writ); Georgetown Builders, Inc. v. Heirs of Tanksley,
498 S.W.2d 222, 224 (Tex. Civ. App.--Austin 1973, writ ref'd n.r.e.). A claimant relying on mere
grazing by livestock to show adverse use must show that he "designedly enclosed" the tract at issue. 
See Rhodes, 802 S.W.2d at 645. The mere presence or maintenance of a fence that existed at the
time the claimant began using the land is insufficient to show a designed enclosure. See Terrill,
985 S.W.2d at 108 (fence that existed before claimant took possession of land was casual fence and
could not be designed enclosure). Rather, the claimant must at least raise a fact issue that he built
the fence for the purpose of enclosing the tract at issue. Hopkins stated in his affidavit that the fence
along the northern boundary of the Disputed Property existed when he purchased his land from
Dobie; consequently Hopkins cannot claim to have "designedly enclosed" the Disputed Property. 
Moreover, evidence that he maintained the fence does not create a fact issue regarding adverse
possession. Repairing or maintaining a casual fence, even for the express purpose of keeping the
claimant's animals within the enclosed area, does not convert a casual fence into a designed
enclosure. Rhodes, 802 S.W.2d at 645. In the present case, the summary judgment evidence shows
the fence to be a "casual fence" and does not support Hopkins's adverse-possession claim. See
McDonnold, 465 S.W.2d at 142; Harlow, 132 S.W.3d at 647. Hopkins's use of the Disputed
Property to graze livestock under these circumstances does not create a genuine issue of material fact
regarding his adverse possession. See Georgetown Builders, Inc., 498 S.W.2d at 224 (mere grazing
of land incidentally enclosed as result of construction of fences built for another purpose does not
constitute possession that will ripen into title by limitation).

 We next consider whether Hopkins's statement to Denson, the owner of the land
north of the Disputed Property, creates a genuine issue of material fact regarding adverse possession. 
The claimant's possession of the property at issue must be hostile to the record owner. Porter
v. Wilson, 389 S.W.2d 650, 658 (Tex. 1965). The test for hostility is whether the acts performed by
the claimant of the land and the use made of the land were of such a nature and character as to
reasonably notify the true owner of the land that a hostile claim to the property was being asserted. 
Winchester v. Poretto, 432 S.W.2d 170, 174-75 (Tex. Civ. App.--Houston [1st Dist.] 1968, writ
ref'd n.r.e.). Hopkins's statement to Denson that he owned the Disputed Property does not constitute
possession of the property hostile to its record owner. Hopkins's conversation with Denson took
place shortly after he acquired his land from Dobie. At that time, Dobie, not Denson, was the record
owner of the Disputed Property. (Denson did not obtain a quitclaim deed to the Disputed Property
until 1982.) Because there is no evidence that Dobie heard or knew of Hopkins's statement to
Denson, that statement does not constitute evidence of possession of the Disputed Property hostile
to its record owner. Moreover, Hopkins stated that he and Denson never spoke again. 

 Hopkins also averred in his affidavit that he had paid property taxes on the property
he purchased from Dobie from the time of purchase to the present, and that the tax plats make no
distinction between the Disputed Property and the land Dobie deeded to Hopkins. Hopkins claims
that his payment of taxes constitutes evidence of notice to Dobie and his successors of Hopkins's
claim to own the Disputed Property. However, when the tax records do not distinguish the tract in
controversy from the tract to which the claimant holds title, the presumption is that the claimant has
paid taxes on his own property. See Welch v. Matthews, 642 S.W.2d 829, 832 (Tex. App.--Tyler
1982, no writ). Hopkins did not include as part of his summary-judgment evidence the tax
assessments themselves or any other evidence tending to show that he paid property taxes assessed
on more than the 7.81 acres of land to which he holds record title. Hopkins has not raised a fact
issue regarding whether or not he paid taxes actually assessed against the Disputed Property.

 Hopkins has failed to raise a genuine issue of material fact regarding his adverse
possession of the Disputed Property, and the trial court properly granted the State and Janoe Truck's
no-evidence motion for summary judgment on Hopkins's claims under civil practice and remedies
code sections 16.026 and 16.028.


Boundary by Acquiescence or Agreement

 Hopkins claims to own the Disputed Property through application of the doctrine of
boundary by acquiescence or agreement. This doctrine applies when (1) there is some uncertainty
as to the true boundary of the claimant's property; (2) the uncertainty resulted in owners of adjacent
property establishing a line between their respective properties; and (3) the adjoining landowners
acquiesced in and recognized this line as the true boundary. Boothe v. Fuentes, 262 S.W.2d 754, 755
(Tex. Civ. App.--San Antonio 1953, no writ). It is essential that uncertainty regarding the location
of the boundary between the adjacent landowners must have existed. Gulf Oil Corp. v. Marathon
Oil Co., 152 S.W.2d 711, 715 (Tex. 1941). To survive the State and Janoe Truck's motion for
summary judgment, there must be a genuine issue of material fact with respect to each of the
elements of boundary by acquiescence or agreement.

 The record evidence conclusively established that there was no uncertainty regarding
the location of the true boundary line between Hopkins's property and the Disputed Property. See
Doria v. Suchowolski, 531 S.W.2d 360, 363 (Tex. Civ. App.--San Antonio 1975, writ denied). The
boundary of the property Hopkins obtained from Dobie is plainly and definitively described in the
conveyance. The boundary originates at a point 60 feet south of an iron stake at the west end of the
northern boundary of the Original Property, follows a series of calls to the south of that boundary,
and then rejoins the northern boundary of the Original Property at its east end. There is simply no
uncertainty as to the location of the northern boundary of Hopkins's property. Any uncertainty that
may have existed between Dobie and Denson with respect to the location of the boundary between
the Disputed Property and the land Denson owned to the north has no bearing on Hopkins's property
line. Hopkins's property line is established by clear survey calls described in the deed conveying the
5.56-acre tract. The trial court properly granted the State and Janoe Truck's motion for summary
judgment on Hopkins's claim to ownership of the Disputed Property through the application of
boundary by acquiescence or agreement.

 There is no genuine issue of material fact regarding at least one element of each of
the grounds Hopkins relied on to establish ownership of the Disputed Property, and the trial court
properly granted the State and Janoe Truck's motion for summary judgment on that issue. We
overrule Hopkins's second issue. (7) 


Exclusion of Summary-Judgment Evidence

 By his third issue, Hopkins contends that the trial court erred by sustaining the State
and Janoe Truck's objections to certain portions of Hopkins's summary-judgment evidence. (8) We
review the decision to admit or exclude evidence under an abuse-of-discretion standard. See City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Gee v. Liberty Mut. Fire Ins. Co.,
765 S.W.2d 394, 396 (Tex. 1989). To reverse a judgment based on a claimed error in admitting or
excluding evidence, a party must show that the error probably resulted in an improper judgment. 
Tex. R. App. P. 44.1; Alvarado, 897 S.W.2d at 753; McCraw v. Maris, 828 S.W.2d 756, 758 (Tex.
1992). A successful challenge to a trial court's evidentiary rulings requires the complaining party
to demonstrate that the judgment turns on the particular evidence excluded or admitted. Texas Dep't
of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).

 The summary-judgment rulings regarding application of the "strip and gore" doctrine
and the doctrine of "boundary by acquiescence or agreement" do not turn on any of the evidence the
trial court excluded. Rather, the trial court concluded, and we agree, that those theories do not apply
in instances such as this one where there is no ambiguity or uncertainty regarding the boundary of
the property at issue or the question of whether the conveyance includes the Disputed Property. The
lack of ambiguity is plain from the face of Hopkins's deed, and that conclusion would not be
different if the trial court or this Court considered any of the evidence the trial court excluded. The
same is true of the trial court's ruling regarding the application of the three-, five- and 25-year
adverse-possession statutes. Hopkins could not, as a matter of law, make claims under these statutes
because he did not hold the property under title or color of title, a registered deed, or a recorded
instrument. Again, this is plain from the deed itself, which does not convey to Hopkins any of the
Disputed Property, coupled with Hopkins's inability as a matter of law to claim title under the "strip
and gore" and "boundary by acquiescence or agreement" doctrines. The trial court's or this Court's
consideration of the evidence excluded would not alter that conclusion. Finally, with regard to the
adverse-possession claim, the trial court did not exclude any of the evidence Hopkins relied on to
support his claim to have actively and visibly appropriated the Disputed Property. The trial court
did not exclude Hopkins's evidence regarding his use of the land, the statement he made to Denson
that he owned the Disputed Property, or his assertion to have paid taxes on the property he acquired
from Dobie. This evidence simply did not create a fact issue with respect to Hopkins's claim to have
adversely possessed the Disputed Property.

 The judgment rendered by the trial court would be the same even if the excluded
evidence were considered. Consequently, the exclusion of some of Hopkins's summary-judgment
evidence, even if erroneous, could not have caused the rendition of an improper judgment. See Tex.
R. App. P. 44.1(a). Therefore, we need not review each of the trial court's rulings to determine
whether it abused its discretion in excluding the proffered evidence. We overrule Hopkins's
third issue.


CONCLUSION

 The trial court properly concluded that there was no genuine issue of material fact
with respect to at least one element of each of the theories Hopkins relied on to attempt to establish
ownership of the Disputed Property and that the State and Janoe Truck were entitled to judgment as
a matter of law. Accordingly, the trial court did not err in granting the State and Janoe Truck's
motion for summary judgment on that claim. Because ownership of the Disputed Property is a
prerequisite to Hopkins's inverse-condemnation claim against the State arising out of its taking of
that property, the trial court correctly rendered summary judgment that Hopkins take nothing by way
of his claims against the State. Moreover, the trial court's conclusion that, as a matter of law,
Hopkins cannot establish that he owns the Disputed Property is dispositive of his suit to quiet title
and trespass-to-try-title action against Janoe Truck. The trial court's order rendering summary
judgment against Hopkins on his claims against Janoe Truck was proper. Finding no error, we
overrule Hopkins's three issues and affirm the trial court's judgment.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: November 13, 2009
1. James A. Hopkins and Jean C. Hopkins were divorced on July 15, 2003. In connection
with the divorce proceedings, Jean conveyed her interest in the claims at issue in this appeal
to James. James brings this appeal individually and as owner of Jean's interest in the
underlying litigation.
2. The State had brought Janoe Truck into the inverse condemnation proceeding as a
third-party defendant. The State acquired the .13-acre drainage easement from Janoe Truck, whom
it believed to be the owner of the Disputed Property. The State's third-party action against Janoe
Truck was for contribution and indemnity in the event Hopkins prevailed on his claim to own the
Disputed Property.
3. The total area of land lying between the two boundaries is .461 acres. Ownership of the
easternmost .010 acres is not at issue in this case.
4. The Estate of J. Frank Dobie quitclaimed the Disputed Property to the Densons, who
quitclaimed it to the Parmers.
5. The .242-acre drainage easement the State sought to acquire from Hopkins does not include
any of the Disputed Property; rather, it lies entirely within the 5.56-acre tract described in the Second
Conveyance.
6. The statute defines "title" as "a regular chain of transfers of real property from or under the
sovereignty of the soil." Tex. Civ. Prac. & Rem. Code Ann. §16.021(4) (West 2002). "Color of
title" means "a consecutive chain of transfers to the person in possession that: (A) is not regular
because of a muniment that is not properly recorded or is only in writing or because of a similar
defect that does not want of intrinsic fairness or honesty; or (B) is based on a certificate of headright,
land warrant, or land scrip." Id. § 16.021(2).
7. Having concluded that summary judgment was proper because of the absence of genuine
issues of material fact with respect to at least one element of each theory Hopkins relies on to support
his claim to own the Disputed Property, we need not address the State and Janoe Truck's affirmative
defense of res judicata and/or collateral estoppel. We note, however, that we have reviewed this
Court's record in Hopkins's appeal from the Condemnation Action. While Hopkins did attempt to
contend in those proceedings that he owned the Disputed Property, the State consistently objected
to the admission of any evidence Hopkins proffered in support of that claim on the ground that "the
ownership of the disputed strip is not an issue in this case" and to the extent the proffered testimony
implicated "this whole title question which is supposed to not be a part of this case." When counsel
for Hopkins asked one of his witnesses whether Hopkins had acquired title to the Disputed Property,
the State objected on the ground that such testimony "calls for a legal conclusion on a legal matter
that isn't part of this case." The trial court repeatedly sustained the State's objections. The record
in the Condemnation Action therefore belies the State's current position that the ownership issue was
fully litigated and finally adjudicated in that proceeding.


 We are also puzzled by the State's assertion in its brief that the Condemnation Action
and Hopkins's inverse condemnation claims against the State, in which he did seek to litigate
ownership of the Disputed Property, were consolidated and tried together. The record does not
support this assertion. The record shows that the Condemnation Action was transferred from county
court at law to the 98th Judicial District Court of Travis County and assigned cause number
GV100300. There is no order consolidating GV100300 with any other case. Hopkins's inverse
condemnation case against the State was filed in the 250th Judicial District Court of Travis County
and assigned cause number GN1-00504. The inverse condemnation case was later consolidated with
Hopkins's suit against Janoe Truck, not with the Condemnation Action.
8. The trial court excluded portions of the affidavit of George L. Sanders, a land surveyor,
regarding the sale transaction between Dobie and Hopkins and stating his opinion regarding the
application of the doctrines of "strip and gore" and boundary by acquiescence. The trial court also
excluded portions of the affidavits of A. C. Schwethelm, a real estate appraiser, and
Kirk Kuykendall, an attorney, in which the affiants set forth their opinions regarding the "strip and
gore" doctrine. The trial court excluded portions of Hopkins's affidavit in which Hopkins described
discussions he had with Dobie prior to purchasing his land, a statement Denson made to Hopkins
regarding the location of the boundary between Denson's property and the Disputed Property, and
a second-hand account of an alleged dispute between Denson and Dobie regarding the location of
the northern boundary of the Original Property. The trial court also excluded documentary evidence
consisting of survey maps and field notes prepared by Hopkins's experts, an inventory from the
Dobie estate, and "tax maps" that identify a 5.56-acre tract belonging to Hopkins.