### J. M. J AGGERS v. C. W. S TRINGER.

Decided November 21, 1907.

**1.—Boundary—Trespass to Try Title.**

In trespass to try title, though the issue be merely one of boundary, the plaintiff must produce evidence reasonably sufficient to show his right to the land, irrespective of the weakness of defendant's title.

**2.—Boundary—Marked Corner—Course and Distance.**

To entitle a call for a corner established by a stake and marked bearing tree to prevail over that reached by the course and distance called for the evidence must show with reasonable certainty that the landmarks in question are or were once to be found at the point claimed. Evidence of the existence of a fallen tree, not shown to bear surveyor's marks, near the point in and of a marked line therefrom, when or by whom made not being shown, in connection with other evidence, considered and held not to establish the location of the marked corner sufficiently to entitle it to control the location fixed by course and distance from undisputed points.

**3.—Survey—Variation of Needle.**

It seems that the allowance for variation of the needle in running one line of a survey should be the same as for its other lines.

Appeal from the District Court of Franklin County. Tried below · before Hon. P. A. Turner.

*R. E. Davenport*, for appellant.

*R. L. Wilkinson* and *W. L. Little*, for appellee.

HODGES, Associate Justice.—This suit was instituted in the District Court of Franklin County, by the appellee, Stringer, to recover of the appellant, Jaggers, the following described tract of land:

Being a part of the John Humphries' survey. Beginning at the original N. E. corner of a 425 acre tract known as the H. B. Carr place, the same being at a point on the N. B. line of the said Humphries' survey 60 vrs. east of the N. E. corner of a tract recently surveyed for Dr. W. C. Crutcher.

Thence south —— vrs. with an old marked line, the same being the E. B. line of the said Carr tract, pass two marked hickories about one foot in diameter, in all south 635 vrs. a stake on said old line for corner ——;

Thence west 60 vrs. to W. C. Crutcher's S. E. corner from which a red oak brs. W. mkd. X.——

Thence north with Crutcher's E. B. line 635 vrs. to his N. E. corner on the N. B. line of said Humphries' survey from which a red oak brs. S. 25 E. mkd. X. ——

Thence east with said Humphries' N. B. line to the place of beginning. A trial before a jury resulted in· a verdict in favor of the appellee, from which appellant appeals.

The controversy arose over a disputed boundary line between two tracts of land lying adjacent to each other and owned by the parties to this suit. Both tracts are a part of a large survey of about 4000 acres in the name of John Humphries, located many years ago, and which had subsequently been subdivided into smaller tracts and sold to various purchasers. The land owned by the appellee, and of which he contends the strip recovered in this suit is a part, consists of a rectangular block of about 425 acres and in the field notes is described as follows:

Beginning at the Bickerstaff N. W. corner. Thence north 2229 3-10 vrs. John Humphries' N. B. line a stake from which a post oak brs. S. 85 E. 14 vrs., marked H. B. C.; a post oak brs. S. 31 W. 10 vrs. marked X.

Thence east 1080 vrs. a stake from which a post oak brs. S. 60 W. 9 vrs., marked X.

Thence south 2229 3-10 vrs. said Bickerstaff's N. E. corner.

Thence west 1080 vrs. to the beginning.

This tract is known as the Carr or Kidd land.

The appellant's tract, of which he claims that · recovered from him in this suit as a part, lies immediately east of the above described land, and is a smaller body consisting of about 200 acres, and runs south only about 1-3 the length of the appellee's tract. His west boundary line coincides with the east boundary line of the appellee's

tract, and his northwest corner is the northeast corner of appellee's land. The diagram given below shows more fully the location of the different tracts of land, and the lines and corners in dispute:

The land owned by the appellee is an older subdivision of the Humphries' survey than that of the appellant, and appellant's deed calls for the east boundary line of the Carr land as its west boundary. A few years ago while Kidd owned the Carr land he sold 120 acres off his east side to Crutcher, which is designated on the diagram as the Crutcher land; but appellee now owns all of the Carr or Kidd tract. The strip of land contained between the dotted lines in the diagram is the land in dispute, and the two places where the respective parties contend the true corner should be are also indicated. Appellee's southwest, southeast and northwest corners are well established and marked. At the last named corner stands a post oak tree marked H. B. C., on the N. B. line of the Humphries' survey. Appellee contends that, notwithstanding his deed in giving the distance from his northwest to his northeast corner calls for only 1080 varas, he is entitled to go 60 varas farther east in order to reach the original and true corner established and marked by the surveyor in the original subdivision of the land; that on account of the call in his deed being for and including a natural object, to wit: "A stake from which a post oak south 60 west 9

varas marked X," he has the right to go to that point, even though it exceeds the distance of his north line as shown in his deed. In other words, he claims that the natural object called for as his northeast corner overcomes the calls for distance. On the other hand, the appellant contends that there is no natural object at the point where the appellee claims his northeast corner is, but that the true corner should be and is exactly 1080 varas east of the appellee's northwest corner, as shown by the calls in his deed. It will, therefore, be observed that the only dispute between the parties to this suit is as to the exact location of this corner on the N. B. line of the Humphries' survey.

In view of the disposition that we make of this case, it is unnecessary to notice any of appellant's assignments of error except that wherein he challenges the sufficiency of the evidence to sustain the verdict of the jury. This is an action of trespass to try title, and the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of that of the defendant.

Appellee's right to recover in this instance depends wholly upon his ability to produce satisfactory evidence of the existence of the monument, or natural object, called for in his deed conflicting with the calls for course and distance, designating the northeast corner of his tract of land at the point where he claims it to be. While it is a general rule that monuments and natural objects will prevail over calls for course and distance, in cases of conflict, still that is not always the case. There may be instances where the surrounding and connecting circumstances adduced in proof will show that the superior marks were placed by inadvertence, or mistake, or that there was a verbal mistake in the description of the natural object, or monument, mentioned in the deed. Sanborn v. Gunter, 84 Texas, 273. In grading the dignity of the different classes of calls usually found in deeds descriptive of tracts of land, courts have intended only to establish a rule for arriving at the location of the boundaries actually established at the time the original survey was made, to be resorted to only in cases where there is in the field notes a real conflict in such calls. While it is said that as a rule monuments and natural objects will be considered superior to course and distance, it is not thereby intended to impeach the sufficiency of course and distance to locate a boundary, but only that it must yield to the superior grade in cases of conflict.

If the calls for course and distance are to govern in this suit in locating the appellee's true northeast corner, then it will unquestionably be located where the appellant claims it to be as shown in the diagram, and the judgment can not be sustained. But if the appellee had adduced evidence sufficient to show that the post oak tree standing south, 60 degrees west, 9 varas distant from the corner, marked with an X, called for in his field notes, is at the point where he claims it to be, then he is entitled to judgment in his favor upon that issue. The only direct evidence tending to establish this fact, shown in the record, is the testimony of Messrs. Pyron and Kidd, both witnesses for the appellee. It seems that Kidd had once owned the entire tract of 425 acres now owned by

the appellee, Stringer, having purchased it from Morris & Carr about the year 1884. Pyron was Kidd's son-in-law and had some interest in the tract, beginning about eleven years before this case was tried in the court below. Pyron testified substantially that near where they (Pyron, Kidd and appellee) claimed the disputed corner to be located he noticed, about eleven years before, a fallen post oak tree and the stump upon which it stood; that at the time he noticed the tree the body was old and rotten and most of the bark had fallen off; that he was unable to tell whether the tree had fallen from some cause, or had been cut down; that he did not see any surveyors' marks on the tree; that where the tree had stood was in a post oak glade. Mr. Kidd testified that he first observed this post oak tree about the time he bought the land, in 1884; that at that time the bark had slipped off, and the stump was there. He also was unable to, or did not, observe any surveyors' marks on this tree. He says it stood about 15 or 20 feet from where they claimed the corner should be, meaning the point where the appellee locates it; but he does not give the direction. Both of these witnesses testify to an old marked line running from this old tree toward the appellee's southeast corner, and say that it could be easily traced entirely through. No witness was able to say when, or by whom, this old line was marked; nor was any further testimony adduced to show that the post oak tree had any surveyors' marks on it. The record indicates that the first survey of this Carr, or Kidd, tract was made about the year 1851, more than thirty years before any witness who testifies had ever seen any of the trees or corners.

At the point where Jaggers claims the corner to be, at a point 10 varas distant, stands a red oak marked with an X. The testimony is conflicting as to whether this mark is a very old one or not. Jaggers testified that several years ago he discovered traces of an old marked line running south from the corner claimed by him, in the direction of the southeast corner of the appellee's land. Other witnesses deny having seen any such marked line.

If this were merely a contest to establish a corner, and there were no other evidence in the deed by which to determine its true location, then it may be conceded that the testimony offered by the appellee preponderates, and upon a submission to a jury would justify a finding in his favor upon the issue. But no such case is here presented. It is not one in which the jury is authorized to decide upon the mere preponderance of the testimony offered by the opposing parties upon the trial; but one where the plaintiff, relying upon the existence of a conflict in the description contained in the field notes of his land, is seeking to show the actual location of a superior evidence of the establishment of his corner at a point farther east than his calls for distance would place it. The calls for course and distance in the description of the appellee's tract of land, as shown by his deed, are definite and explicit, sufficiently so to locate the corner with precision. The location made by resort to this means is in accord both with the configuration of the tract, and with the quantum of land specified as having been conveyed. If the appellee would overcome this proof and establish the corner farther

east he must do so by showing with reasonable certainty, not only the existence of the monument, or natural object, mentioned in his field notes, but that this object is in conflict with the calls for course and distance also contained in it. In our opinion he has utterly failed to do either. To sustain the verdict in this case, we must assume from the mere circumstance that a fallen post oak lay near where the appellee claims the corner to be, that this tree had the surveyor's marks on it and was the identical tree called for in the deed. Such an assumption would be a dangerous indulgence of the power of conjecture. The fact that there was an old marked line running from this supposed corner, in the direction of the appellee's southeast corner, adds but little, if any, probative force to the existence of the fallen tree. It is not a line, but a corner, that is sought for in this controversy. Given the corner, then, with the undisputed calls for course, as shown in this deed, the line follows as a mathematical result. The apparent age of the line is the only feature about it which should elicit any consideration. To find that it was the one made and marked in the original survey of this tract of land would again require us to conjecture a fact too remote from any positive testimony. We have been unable to find anything in the record that would justify us in concluding that the plain and unambiguous description of the appellee's land, contained in his deed, should be ignored. Certainly, before this should be done in any instance the evidence should be clear and convincing.

There are other errors pointed out which would justify the reversal of this judgment; but we have refrained from discussing them, for the reasons before mentioned. There is nothing in the record to indicate that the appellee would probably be able to strengthen his case upon another trial. There was no testimony offered by him and excluded by the court, and there is an absence of any complaint from him as to any of the rulings of the trial court. According to his own showing it is clear that he is not entitled to recover in this suit. The judgment will therefore be reversed and here rendered for the appellant, defendant in the court below.

ON MOTION FOR REHEARING.

Appellee contends in his motion for a rehearing that we erred in holding the testimony was insufficient to support the verdict of the jury, and in rendering judgment here against him. He asserts that this is a boundary suit, and that the case was tried in the court below upon "the hypothesis that the true location" of the division line between the two tracts of land was the only question for the jury. This may be true, but the pleadings in the record clearly show that the appellee, plaintiff below, sued to recover a specific tract of land, described by metes and bounds. His right to recover this tract was the issue. The appellant, defendant in the court below, did not meet this issue with a disclaimer, which would have made it strictly and technically a boundary suit, but pleaded a general denial and not guilty. This pleading had the effect of imposing upon the appellee the burden of showing title to the land sued for, other-

wise he could not recover. Until he had shown at least a prima facie title the strength of the appellant's claim of title need not be considered. The effect of the disposition we made of the case was to hold that appellee had failed to establish even a prima facie right to the tract sued for. Appellee claims · that the testimony of the witness Cowan was to the effect that if a line was run on a correct variation of the compass from the northeast corner of the Bickerstaff tract, which is the southeast corner of the Carr tract, it would coincide with the line claimed by him to be the true line; and if one should be run from the southwest corner of the Carr tract north, on a correct variation, it would intersect with the Humphreys' N. B. line, one degree east of the west boundary line of the Carr tract. We are not told what is meant by the term "correct variation." Evidently it was a variation different from that upon which the original lines of the Carr tract were run, as it does not coincide with the west line of that tract, but diverges from it one degree, or about 60 varas, in the length of the line. The record shows that Cowan testified as follows: "The W. B. line of the 425 acres of the Kidd land (known as the Carr land, and that claimed by the appellee) is a well defined and well marked line and can be easily traced on the ground; the trees with hacks are still there. The S. W. corner of this tract is well established and can be easily found; the south end of the tract measures 1080 varas across and the S. E. corner can be located, the stump of this corner was standing there when I first surveyed the land. When a surveyor runs one line of a survey on a 'certain variation he should run all the others on the same variation. To run the east line of the 425 acres of the Kidd land (Carr land) on the same variation as the west line of this tract would throw the line where the defendant (appellant Jaggers) claims it is. When you commence at the H. B. C. tree and run east 1080 varas, you are within ten varas of a red oak tree marked with a cross. This 425 acres calls for a tract ―― varas long and 1080 varas wide. The call on the north line is 1080 varas, and on the south line 1080 varas. The line as claimed by Jaggers runs down and strikes the Seaborn Bickerstaff N. E. corner and runs with Bickerstaff's E. B. line, which is also a part of the John Humphreys' survey." In the light of this testimony and the plain calls in the appellee's deed for course and distance, the northeast corner of the appellee's land is bound to be exactly 1080 varas east of his N. W. corner, just where appellant claims it to be, unless the post oak called for as a bearing tree be shown to be at a different place from where the calls for course and distance in his deed locate it. In no other way has he attempted to show title to the land sued for. This is not a situation in which a mere preponderance of testimony will determine the appellee's right of recovery, but one where the existence of a fact is relied upon to establish an asserted right, and where the sufficiency of the evidence is one of first importance. The issue is not whether Stringer or Jaggers owns the land, based upon the assumption that one or the other does own it; but whether Stringer owns it. Jaggers can defeat the

latter's claim by the mere failure of Stringer to prove title; it is not essential that he show a superior title in himself until Stringer has shown at least a prima facie title. Has appellee done this? The original survey of the Carr tract appears to have been made about fifty-five years ago, more than thirty years before any living witness observed the place; and the bearing tree, the post oak marked X, may have fallen and rotted away. There is nothing to indicate what was its size or condition at the time marked. The fact that none is standing there now, nor was there twenty years ago, can not be considered as conclusive evidence that none was ever there. The testimony of Pyron and Kidd to the existence of the old marked line running from appellee's southeast corner in the direction of where the latter asserts the true corner to be, may furnish grounds to infer that there might have been a corner at that place. But this inference is seriously weakened, if not practically destroyed, when we consider that this line would not be parallel with the well established west boundary line of the same tract, and would thus contradict the plain calls for course in the deed, the distance from the N. W. corner, and would have the effect of giving more land than the deed undertakes to convey. We have very carefully reconsidered the testimony in the record, and fail to find anything to cause us to change our former view of this case. We still think the testimony insufficient to warrant a verdict in favor of the appellee. The motion for rehearing is therefore overruled.

*Reversed and rendered for appellant.*

Application for writ of error dismissed for want of jurisdiction.