# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00253-CV

**James A. Hopkins and Jean C. Hopkins, Appellants**

**v.**

**The State of Texas and Janoe Truck Sales and Service, Inc., Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-01-000504, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

James A. Hopkins and Jean C. Hopkins (collectively "Hopkins")[1] sued Janoe Truck Sales and Service, Inc. ("Janoe Truck") seeking to establish ownership of a .451-acre tract of land in Travis County. Hopkins brought a separate inverse condemnation action against the State of Texas seeking compensation for .13 acres of the .451-acre tract taken by the State for a drainage easement. The two suits were consolidated, and the trial court rendered a take-nothing summary judgment in favor of the State and Janoe Truck. By three issues Hopkins contends that (1) the trial court erred by granting summary judgment on claims that were not part of the State and Janoe Truck's motion; (2) summary judgment was not proper as to the claims that were included in the

---

[1] James A. Hopkins and Jean C. Hopkins were divorced on July 15, 2003. In connection with the divorce proceedings, Jean conveyed her interest in the claims at issue in this appeal to James. James brings this appeal individually and as owner of Jean's interest in the underlying litigation.

motion; and (3) the trial court improperly sustained the State and Janoe Truck's objections to his summary-judgment evidence. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2001, Hopkins filed a suit to quiet title and a trespass-to-try-title action against Janoe Truck (Cause No. GN1-00504) seeking to resolve a dispute regarding ownership of .451 acres of land (the "Disputed Property") located to the north of what both parties agree is Hopkins's land and to the south of what both parties agree is Janoe Truck's land. In April 2001, Hopkins filed an inverse condemnation action against the State (Cause No. GN1-01295) seeking damages resulting from the State's taking of .13 acres of the Disputed Property for use as a drainage easement. Because the issue of whether Hopkins owned the Disputed Property was central to both causes of action, Janoe Truck filed a motion to consolidate.[2] The district court subsequently ordered the cases consolidated for all purposes under Cause No. GN1-00504. The State and Janoe Truck filed a joint traditional and no-evidence motion for summary judgment contending that, as a matter of law, Hopkins did not own the Disputed Property. The district court granted the motion for summary judgment and subsequently rendered judgment that Hopkins take nothing by way of his claims and causes of action against the State and Janoe Truck, all of which depended on Hopkins's proving that he owned the Disputed Property. This appeal followed.

---

[2] The State had brought Janoe Truck into the inverse condemnation proceeding as a third-party defendant. The State acquired the .13-acre drainage easement from Janoe Truck, whom it believed to be the owner of the Disputed Property. The State's third-party action against Janoe Truck was for contribution and indemnity in the event Hopkins prevailed on his claim to own the Disputed Property.

2

*Hopkins's Property*

In 1947, Gladys Beck, individually and as independent executrix of the estate of W. H. Beck, joined by Walter H. Beck, Jr. and his wife Jane G. Beck ("Beck"), conveyed 86.08 acres of land in Travis County, Texas (the "Original Property") to J. Frank Dobie. The northern border of the Original Property is described in the field notes as "the average of the meanders of a pasture branch" and was the boundary between the Original Property and property then owned by Janoe Truck's predecessors in interest. In 1962, Dobie conveyed a one-acre east-west rectangular tract in the middle of the Original Property to Hopkins (the "First Conveyance"). (See Figure 1.) In 1970, the Estate of J. Frank Dobie conveyed two additional tracts of land out of the Original Property to Hopkins (the "Second Conveyance"). The Second Conveyance consisted of 1.25 acres south of and adjacent to the First Conveyance, and 5.56 acres north of and adjacent to the First Conveyance. The metes and bounds description in the Second Conveyance indicates that the northern boundary of the 5.56-acre tract is south of the northern boundary of the Original Property. The northern boundary of the 5.56-acre tract begins at "Point B," which is approximately 60 feet south of an iron stake located at the west end of the northern boundary of the Original Property. From "Point B," the surveyor made three specific calls, two of which are also south of the northern boundary of the Original Property and the third of which is a point on the east end of the northern boundary of the Original Property. The northern boundary of the 5.56-acre tract consists of a line joining each of these points. Consequently, the northern boundary for the 5.56-acre tract begins at a point 60 feet south of the west end of the northern boundary of the Original Property, and remains to the south

3

until it rejoins the northern boundary of the Original Property at its easternmost point. The Disputed

Property is a .451-acre tract lying between the two boundaries.[3]



Figure 1 (not to scale)

---

[3] The total area of land lying between the two boundaries is .461 acres. Ownership of the easternmost .010 acres is not at issue in this case.

*Janoe Truck's Property*

In 1957, Clara Simpson conveyed a 20.9-acre tract of land adjacent to the northern boundary of the Original Property to O. D. and Stella Denson. In 1972, the Densons conveyed a portion of that land to Joe D. Parmer and Bret Parmer. In 1982, the Parmers conveyed 5.95 acres of their land to Tom D. Janoe (Janoe). The 5.95 acres lies adjacent to the northern boundary of the Original Property, which is also the northern boundary of the Disputed Property. In 1982, Janoe also acquired a quitclaim deed to the Disputed Property from the Parmers.[4] In 1983, Janoe platted his property and included the Disputed Property in his plat. In 1986, Janoe conveyed the platted tract (approximately 6.39 acres) to Janoe Truck.

*The State's Involvement*

In the late 1980s, the State began projects to improve IH-35 and re-route portions of Slaughter Lane and Congress Avenue. The Janoe Truck and Hopkins properties are adjacent to, and east of, IH-35. Consequently, the State sought to acquire drainage easements over portions of Hopkins's and Janoe Truck's properties. In 1991, Janoe Truck provided the State a permanent drainage easement over .313 acres of its property, .13 acres of which was embedded within the Disputed Property.

In 1990, the State commenced condemnation proceedings against Hopkins (the "Condemnation Action") seeking to acquire a drainage easement over .242 acres of Hopkins's 5.56-acre tract. The .242 acres is adjacent to, and south of, the .313 acre easement acquired from Janoe

---

[4] The Estate of J. Frank Dobie quitclaimed the Disputed Property to the Densons, who quitclaimed it to the Parmers.

Truck. In 1991, the Special Commissioners awarded Hopkins $35,462 as compensation for the .242-acre easement and to compensate him for the diminution in value of the remainder of his property resulting from the taking. Hopkins filed objections to the award, and the Condemnation Action remained pending in the County Court at Law No. 1 of Travis County for almost ten years. In December 2000, Hopkins raised an issue regarding the size of his property affected by the taking. Relying on the "strip and gore" doctrine, Hopkins claimed ownership of the Disputed Property. Consequently, Hopkins contended that the remainder property affected by the easement was 8.271 acres as compared to the State's position that the condemnation affected only 7.81 acres. In February 2001, Hopkins filed First Amended Objections to the Award of the Special Commissioners alleging that he owned the Disputed Property and asserting that the size of the property damaged by the taking of the .242-acre easement was 8.271 acres.[5]

Hopkins moved to transfer the case from the county court at law to district court on the ground that the case involved title to land. In February 2001, the county court at law transferred the Condemnation Action to the 98th Judicial District Court of Travis County, where it was assigned Cause No. GV100300. In January 2003, Hopkins filed "Second Amended Objections to the Award of the Special Commissioners and Cross Claims" asserting counter-claims against the State for nuisance and violations of the Texas Water Code. The case was tried to a jury in February 2003. At the conclusion of Hopkins's evidence, the district court granted the State's motion for a directed verdict on Hopkins's counter-claims. The case was then submitted to the jury to determine the fair

---

[5] The .242-acre drainage easement the State sought to acquire from Hopkins does not include any of the Disputed Property; rather, it lies entirely within the 5.56-acre tract described in the Second Conveyance.

6

market value of the .242-acre easement interest taken. The jury was also charged with determining the decrease in fair market value of "the remainder of the 7.81 acres of the Condemnees's land, immediately after the taking on August 21, 1991, taking into consideration the effect of the condemnation on the value of the remaining property." The trial court refused Hopkins's request to instruct the jury that the size of the property affected by the easement was 8.271 acres. The jury returned a verdict awarding Hopkins damages. The trial court rendered a final judgment on the jury's verdict and awarded Hopkins damages and pre-judgment interest. Hopkins appealed, and this Court affirmed the judgment with the exception of the pre- and post-judgment interest calculations and the award of costs. *See Hopkins v. State*, No. 03-03-00499-CV, 2006 Tex. App. LEXIS 3530 (Tex. App.—Austin Apr. 27, 2006, pet. denied) (mem. op.).

***Hopkins's Suits Against the State and Janoe Truck***

Hopkins filed his suits against the State and Janoe Truck while the Condemnation Action was pending. In his inverse condemnation case against the State, Hopkins claimed that he, rather than Janoe Truck, owned the Disputed Property and asserted that the State improperly acquired the .13-acre easement embedded in the Disputed Property from Janoe Truck rather than from him. Hopkins sought compensation from the State for the taking. Hopkins also sought damages resulting from the State's releasing water from drainage structures upstream onto the Disputed Property.

In his suit against Janoe Truck, Hopkins sought to quiet title to the Disputed Property. Hopkins asserted that he owned the Disputed Property through application of the "strip and gore" doctrine. In the alternative, Hopkins included a trespass-to-try-title action against Janoe Truck

7

asserting ownership of the Disputed Property through adverse possession or "boundary by acquiescence or agreement." Hopkins requested an adjudication that he owned the Disputed Property and sought to remove an alleged cloud on his title created by Janoe Truck's conveyance of .13 acres of that property to the State for the drainage easement.

The State and Janoe Truck filed a joint traditional and no-evidence motion for summary judgment contending that, as a matter of law, Hopkins could not prevail on his claim to own the Disputed Property. The State and Janoe Truck first asserted that the doctrines of res judicata and/or collateral estoppel barred his claim to ownership because Hopkins had unsuccessfully litigated that issue in the Condemnation Action. The State and Janoe Truck further contended that, as a matter of law, Hopkins could not establish ownership to the Disputed Property by application of the "strip and gore" doctrine or pursuant to adverse-possession statutes that require the claimant to hold property under title, color of title, registered deed, or recorded instrument. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.024 (three-year title or color-of-title statute), .025 (five-year registered deed statute), .028 (25-year recorded instrument statute) (West 2002). The State and Janoe Truck also asserted that they were entitled to summary judgment with regard to Hopkins's claim of ownership through boundary by acquiescence or agreement and adverse possession under the ten- and 25-year bare possession statutes. *See id.* §§ 16.026 (ten-year bare possession statute), .027 (25-year bare possession statute) (West 2002). Without stating the grounds on which it relied, the district court granted the motion for summary judgment. The court then rendered a take nothing judgment in the State's and Janoe Truck's favor on all claims Hopkins asserted against them in the consolidated action. Hopkins perfected this appeal.

8

## STANDARD OF REVIEW

We review the trial court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its summary judgment, we must affirm if any of the grounds presented to the district court in the motion are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

The party moving for a traditional summary judgment under rule 166a(c) must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When a defendant moves for summary judgment, he must either conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve all doubts in his favor. *Id.*; *Nixon*, 690 S.W.2d at 549.

Under rule 166a(i), a movant must assert that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat a rule 166a(i) summary-judgment motion, the nonmovant must produce summary-judgment evidence raising a genuine issue of material fact as to each challenged element. Tex. R. Civ. P.166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598,

600 (Tex. 2004). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged element. *Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

## DISCUSSION

By his first issue, Hopkins complains that the trial court granted summary judgment on claims that were not included in the State and Janoe Truck's joint motion for summary judgment. Hopkins asserts that the trial court therefore erred by granting greater relief than the movants requested in their motion. We disagree with Hopkins's characterization of the trial court's rulings. The State and Janoe Truck filed a joint motion for summary judgment as to the issue of Hopkins's ownership of the Disputed Property. In that motion, the State and Janoe advanced a number of arguments to support their motion, including that the ownership issue had been previously litigated and adjudicated against Hopkins and that Hopkins could not, as a matter of law, prevail on any of the ownership theories—"strip and gore" doctrine, title by acquiescence or agreement, and adverse possession—advanced in the consolidated action. The trial court granted the joint motion for summary judgment, agreeing that, as a matter of law, Hopkins could not establish ownership of the Disputed Property. After the court ruled in their favor on the summary judgment motion, the State and Janoe Truck filed a motion requesting that the court render a take-nothing judgment against Hopkins. The court granted the motion and rendered the take-nothing judgment. Hopkins's causes of action against the State for inverse condemnation, nuisance, and violations of the water code were

10

predicated on a showing that Hopkins owned the Disputed Property. Moreover, the purpose of his suit to quiet title and trespass-to-try-title action against Janoe Truck was to obtain an adjudication that he owned the Disputed Property. Once the issue of ownership of the Disputed Property was decided against Hopkins, he could not prevail on any of the claims asserted against the State or against Janoe Truck. The trial court properly granted the State and Janoe Truck's motion for a take-nothing judgment and rendered judgment against Hopkins. We overrule Hopkins's first issue.

By his second issue, Hopkins contends that genuine issues of material fact exist with respect to each of the elements of the theories he relies on to establish ownership of the Disputed Property. He contends, therefore, that the trial court erred in granting the State and Janoe Truck's motion for summary judgment on that issue. We review each of the theories Hopkins has advanced in support of his claim to own the Disputed Property.

### *"Strip and Gore" Doctrine*

The State and Janoe Truck argued that Hopkins's claim to ownership of the Disputed Property through application of the "strip and gore" doctrine fails as a matter of law. We agree. The "strip and gore" doctrine allows for a presumption that a deed conveys a small parcel of land omitted from the description of the land conveyed if the parcel (1) is small in comparison to the land conveyed; (2) is adjacent to or surrounded by the land conveyed; (3) belonged to the grantor at the time of the conveyance; and (4) was of no benefit or importance to the grantor. *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). However, this presumption applies only when the deed is ambiguous with regard to whether it conveys the strip at issue. *Woolaver v. Texaco, Inc.*, 594 S.W.2d 224, 225 (Tex. Civ.

11

App.—Fort Worth 1980, no writ); *Miller v. Crum*, 314 S.W.2d 389, 395 (Tex. Civ. App.—Fort Worth 1958, no writ). Furthermore, the presumption does not apply when the grantor plainly and specifically reserves the strip to himself. *Sigmar v. Anderson*, 212 S.W.3d 789, 795 (Tex. App.—Austin 2006, no pet.).

The deed at issue in the present case is not ambiguous. The location of the northern boundary of the 5.56-acre tract is precisely described; the metes and bounds description recognizes both the departure from and return to the northern boundary of the Original Property. The deed evidences Dobie's plain and deliberate intent not to convey, and therefore to reserve ownership of, the land lying between the northern boundary of the 5.56-acre tract and the northern boundary of the Original Property—the Disputed Property. Under these circumstances, the "strip and gore" doctrine does not supply a presumption that Dobie intended to convey the Disputed Property to Hopkins. Rather, the conveyance itself conclusively demonstrates that he did not. Hopkins's claim to ownership through application of the "strip and gore" doctrine fails as a matter of law.

### Adverse Possession

In the alternative, Hopkins claims to have acquired title to the Disputed Property by adverse possession. In order to defeat the State and Janoe Truck's motion for summary judgment, Hopkins was required to show that a genuine issue of material fact exists with respect to each of the elements of at least one of the five Texas adverse-possession statutes: the three-year title or color-of-title statute, the five-year registered deed statute, the 25-year recorded instrument statute, the ten-year bare possession statute, or the 25-year bare possession statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.024-.028.

12

*The Three-, Five-, and 25-Year Statutes*

Three of the adverse-possession statutes require that the claimant assert ownership under title or color of title, a recorded deed, or a recorded instrument. *See id.* §§ 16.024 (must claim under title or color of title); .025 (must claim under registered deed); .028 (must claim under recorded instrument). Section 16.024 of the civil practice and remedies code provides that suit must be brought against a person who holds property in peaceable and adverse possession under title or color of title within three years after the day the cause of action accrues. *Id.* § 16.024. Section 16.025 provides that suit must be brought within five years after the day the cause of action accrues against a person who cultivates the property, pays taxes on the property, *and* claims the property under a duly registered deed. *Id.* § 16.025. Section 16.028 provides that suit must be brought within 25 years against a person who holds the property in good faith and under a deed or other instrument purporting to covey the property that is recorded in the deed records of the county where any part of the real property is located. *Id.* § 16.028.

As discussed above, Hopkins cannot rely on the "strip and gore" doctrine to supply a presumption that his conveyance from Dobie includes the Disputed Property. There is no other evidence in the record that Hopkins has either a registered deed or a recorded instrument purporting to convey the Disputed Property to him. Nor is there evidence that he otherwise has "title" or "color of title" to the Disputed Property as those terms are defined by statute. *See id.* § 16.021.[6] The

_____

[6] The statute defines "title" as "a regular chain of transfers of real property from or under the sovereignty of the soil." Tex. Civ. Prac. & Rem. Code Ann. §16.021(4) (West 2002). "Color of title" means "a consecutive chain of transfers to the person in possession that: (A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or (B) is based on a certificate of headright,

13

summary judgment record does not include evidence creating a genuine issue of material fact with respect to at least one element of each of these three adverse-possession statutes. Therefore, summary judgment against Hopkins on his claims to have acquired the Disputed Property pursuant to civil practice and remedies code sections 16.024, 16.025, or 16.028 was proper.

***The Ten- and 25-Year Bare Possession Statutes***

Hopkins also claims to have acquired title to the Disputed Property through bare adverse possession, which does not require that he assert a claim under title, color of title, a registered deed, or a recorded instrument. *See id.* § 16.026 (ten-year bare possession statute), .027 (25-year bare possession statute). To claim adverse possession under civil practice and remedies code section 16.026, the claimant must prove that he adversely possessed the claimed land for ten years. To claim adverse possession under section 16.027 of the civil practice and remedies code, the claimant must prove that he adversely possessed the claimed land for 25 years. Adverse possession is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.027. Possession must be "actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *see also Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.). Moreover, the adverse possession must be hostile to the rights of the record owner. *See* Tex. Civ. Prac. & Rem. Code Ann.

_____

land warrant, or land scrip." *Id.* § 16.021(2).

14

§ 16.021(1). To survive the State and Janoe Truck's motion for summary judgment, the record had to contain evidence that raised a fact issue as to whether Hopkins's use of the Disputed Property was in the nature of activities that constituted adverse possession—that is, that it was an actual and visible appropriation of the Disputed Property such that the true owner was given notice of a hostile claim. *Rhodes*, 802 S.W.2d at 645; *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex. App.—Eastland 2004, pet. denied).

To raise a genuine issue of material fact regarding his claim to have adversely possessed the Disputed Property, Hopkins relied on his own affidavit. In the affidavit, Hopkins averred that he kept cows and a horse on the property he purchased from Dobie and that he was careful to maintain the boundary fencing, including a fence running along the northern boundary of the Original Property (also the northern boundary of the Disputed Property) that was in place at the time he purchased his property from Dobie. Hopkins's evidence of his "actual and visible appropriation" of the Disputed Property consists of using the Disputed Property for grazing cattle and horses and his repair of a fence that already existed at the time he originally purchased his land. Hopkins also averred that, shortly after acquiring the property from Dobie, he had a conversation with O. D. Denson, the then-owner of land north of the Disputed Property, during which he told Denson that he owned the Disputed Property. Hopkins and Denson never spoke after that conversation. Hopkins produced no other evidence of use or appropriation of the Disputed Property.

Hopkins's affidavit does not create a genuine issue of material fact regarding his adverse possession of the Disputed Property. The law is well settled that the mere grazing of land incidentally enclosed by a fence created by others cannot support a claim of adverse possession.

15

*McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971); *West Prod. Co. v. Kahanek*, 121 S.W.2d 328, 331 (Tex. 1938); *Mohnke v. Greenwood*, 915 S.W.2d 585, 593 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Georgetown Builders, Inc. v. Heirs of Tanksley*, 498 S.W.2d 222, 224 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.). A claimant relying on mere grazing by livestock to show adverse use must show that he "designedly enclosed" the tract at issue. *See Rhodes*, 802 S.W.2d at 645. The mere presence or maintenance of a fence that existed at the time the claimant began using the land is insufficient to show a designed enclosure. *See Terrill*, 985 S.W.2d at 108 (fence that existed before claimant took possession of land was casual fence and could not be designed enclosure). Rather, the claimant must at least raise a fact issue that he built the fence for the purpose of enclosing the tract at issue. Hopkins stated in his affidavit that the fence along the northern boundary of the Disputed Property existed when he purchased his land from Dobie; consequently Hopkins cannot claim to have "designedly enclosed" the Disputed Property. Moreover, evidence that he maintained the fence does not create a fact issue regarding adverse possession. Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, does not convert a casual fence into a designed enclosure. *Rhodes*, 802 S.W.2d at 645. In the present case, the summary judgment evidence shows the fence to be a "casual fence" and does not support Hopkins's adverse-possession claim. *See McDonnold*, 465 S.W.2d at 142; *Harlow*, 132 S.W.3d at 647. Hopkins's use of the Disputed Property to graze livestock under these circumstances does not create a genuine issue of material fact regarding his adverse possession. *See Georgetown Builders, Inc.*, 498 S.W.2d at 224 (mere grazing

of land incidentally enclosed as result of construction of fences built for another purpose does not constitute possession that will ripen into title by limitation).

We next consider whether Hopkins's statement to Denson, the owner of the land north of the Disputed Property, creates a genuine issue of material fact regarding adverse possession. The claimant's possession of the property at issue must be hostile to the *record owner*. *Porter v. Wilson*, 389 S.W.2d 650, 658 (Tex. 1965). The test for hostility is whether the acts performed by the claimant of the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim to the property was being asserted. *Winchester v. Poretto*, 432 S.W.2d 170, 174-75 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). Hopkins's statement to Denson that he owned the Disputed Property does not constitute possession of the property hostile to its record owner. Hopkins's conversation with Denson took place shortly after he acquired his land from Dobie. At that time, Dobie, not Denson, was the record owner of the Disputed Property. (Denson did not obtain a quitclaim deed to the Disputed Property until 1982.) Because there is no evidence that Dobie heard or knew of Hopkins's statement to Denson, that statement does not constitute evidence of possession of the Disputed Property hostile to its record owner. Moreover, Hopkins stated that he and Denson never spoke again.

Hopkins also averred in his affidavit that he had paid property taxes on the property he purchased from Dobie from the time of purchase to the present, and that the tax plats make no distinction between the Disputed Property and the land Dobie deeded to Hopkins. Hopkins claims that his payment of taxes constitutes evidence of notice to Dobie and his successors of Hopkins's claim to own the Disputed Property. However, when the tax records do not distinguish the tract in

17

controversy from the tract to which the claimant holds title, the presumption is that the claimant has paid taxes on his own property. *See Welch v. Matthews*, 642 S.W.2d 829, 832 (Tex. App.—Tyler 1982, no writ). Hopkins did not include as part of his summary-judgment evidence the tax assessments themselves or any other evidence tending to show that he paid property taxes assessed on more than the 7.81 acres of land to which he holds record title. Hopkins has not raised a fact issue regarding whether or not he paid taxes actually assessed against the Disputed Property.

Hopkins has failed to raise a genuine issue of material fact regarding his adverse possession of the Disputed Property, and the trial court properly granted the State and Janoe Truck's no-evidence motion for summary judgment on Hopkins's claims under civil practice and remedies code sections 16.026 and 16.028.

### *Boundary by Acquiescence or Agreement*

Hopkins claims to own the Disputed Property through application of the doctrine of boundary by acquiescence or agreement. This doctrine applies when (1) there is some uncertainty as to the true boundary of the claimant's property; (2) the uncertainty resulted in owners of adjacent property establishing a line between their respective properties; and (3) the adjoining landowners acquiesced in and recognized this line as the true boundary. *Boothe v. Fuentes*, 262 S.W.2d 754, 755 (Tex. Civ. App.—San Antonio 1953, no writ). It is essential that uncertainty regarding the location of the boundary between the adjacent landowners must have existed. *Gulf Oil Corp. v. Marathon Oil Co.*, 152 S.W.2d 711, 715 (Tex. 1941). To survive the State and Janoe Truck's motion for summary judgment, there must be a genuine issue of material fact with respect to each of the elements of boundary by acquiescence or agreement.

18

The record evidence conclusively established that there was no uncertainty regarding the location of the true boundary line between Hopkins's property and the Disputed Property. *See Doria v. Suchowolski*, 531 S.W.2d 360, 363 (Tex. Civ. App.—San Antonio 1975, writ denied). The boundary of the property Hopkins obtained from Dobie is plainly and definitively described in the conveyance. The boundary originates at a point 60 feet south of an iron stake at the west end of the northern boundary of the Original Property, follows a series of calls to the south of that boundary, and then rejoins the northern boundary of the Original Property at its east end. There is simply no uncertainty as to the location of the northern boundary of Hopkins's property. Any uncertainty that may have existed *between Dobie and Denson* with respect to the location of the boundary between the Disputed Property and the land Denson owned to the north has no bearing on Hopkins's property line. Hopkins's property line is established by clear survey calls described in the deed conveying the 5.56-acre tract. The trial court properly granted the State and Janoe Truck's motion for summary judgment on Hopkins's claim to ownership of the Disputed Property through the application of boundary by acquiescence or agreement.

There is no genuine issue of material fact regarding at least one element of each of the grounds Hopkins relied on to establish ownership of the Disputed Property, and the trial court properly granted the State and Janoe Truck's motion for summary judgment on that issue. We overrule Hopkins's second issue.[7]

---

[7] Having concluded that summary judgment was proper because of the absence of genuine issues of material fact with respect to at least one element of each theory Hopkins relies on to support his claim to own the Disputed Property, we need not address the State and Janoe Truck's affirmative defense of res judicata and/or collateral estoppel. We note, however, that we have reviewed this Court's record in Hopkins's appeal from the Condemnation Action. While Hopkins did attempt to

19

***Exclusion of Summary-Judgment Evidence***

By his third issue, Hopkins contends that the trial court erred by sustaining the State

and Janoe Truck's objections to certain portions of Hopkins's summary-judgment evidence.[8] We

review the decision to admit or exclude evidence under an abuse-of-discretion standard. *See City*

*of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Gee v. Liberty Mut. Fire Ins. Co.*,

---

contend in those proceedings that he owned the Disputed Property, the State consistently objected to the admission of any evidence Hopkins proffered in support of that claim on the ground that "the ownership of the disputed strip is not an issue in this case" and to the extent the proffered testimony implicated "this whole title question which is supposed to not be a part of this case." When counsel for Hopkins asked one of his witnesses whether Hopkins had acquired title to the Disputed Property, the State objected on the ground that such testimony "calls for a legal conclusion on a legal matter that isn't part of this case." The trial court repeatedly sustained the State's objections. The record in the Condemnation Action therefore belies the State's current position that the ownership issue was fully litigated and finally adjudicated in that proceeding.

We are also puzzled by the State's assertion in its brief that the Condemnation Action and Hopkins's inverse condemnation claims against the State, in which he did seek to litigate ownership of the Disputed Property, were consolidated and tried together. The record does not support this assertion. The record shows that the Condemnation Action was transferred from county court at law to the 98th Judicial District Court of Travis County and assigned cause number GV100300. There is no order consolidating GV100300 with any other case. Hopkins's inverse condemnation case against the State was filed in the 250th Judicial District Court of Travis County and assigned cause number GN1–00504. The inverse condemnation case was later consolidated with Hopkins's suit against Janoe Truck, *not* with the Condemnation Action.

[8] The trial court excluded portions of the affidavit of George L. Sanders, a land surveyor, regarding the sale transaction between Dobie and Hopkins and stating his opinion regarding the application of the doctrines of "strip and gore" and boundary by acquiescence. The trial court also excluded portions of the affidavits of A. C. Schwethelm, a real estate appraiser, and Kirk Kuykendall, an attorney, in which the affiants set forth their opinions regarding the "strip and gore" doctrine. The trial court excluded portions of Hopkins's affidavit in which Hopkins described discussions he had with Dobie prior to purchasing his land, a statement Denson made to Hopkins regarding the location of the boundary between Denson's property and the Disputed Property, and a second-hand account of an alleged dispute between Denson and Dobie regarding the location of the northern boundary of the Original Property. The trial court also excluded documentary evidence consisting of survey maps and field notes prepared by Hopkins's experts, an inventory from the Dobie estate, and "tax maps" that identify a 5.56-acre tract belonging to Hopkins.

765 S.W.2d 394, 396 (Tex. 1989). To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *Alvarado*, 897 S.W.2d at 753; *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992). A successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

The summary-judgment rulings regarding application of the "strip and gore" doctrine and the doctrine of "boundary by acquiescence or agreement" do not turn on any of the evidence the trial court excluded. Rather, the trial court concluded, and we agree, that those theories do not apply in instances such as this one where there is no ambiguity or uncertainty regarding the boundary of the property at issue or the question of whether the conveyance includes the Disputed Property. The lack of ambiguity is plain from the face of Hopkins's deed, and that conclusion would not be different if the trial court or this Court considered any of the evidence the trial court excluded. The same is true of the trial court's ruling regarding the application of the three-, five- and 25-year adverse-possession statutes. Hopkins could not, as a matter of law, make claims under these statutes because he did not hold the property under title or color of title, a registered deed, or a recorded instrument. Again, this is plain from the deed itself, which does not convey to Hopkins any of the Disputed Property, coupled with Hopkins's inability as a matter of law to claim title under the "strip and gore" and "boundary by acquiescence or agreement" doctrines. The trial court's or this Court's consideration of the evidence excluded would not alter that conclusion. Finally, with regard to the adverse-possession claim, the trial court did not exclude any of the evidence Hopkins relied on to

21

support his claim to have actively and visibly appropriated the Disputed Property. The trial court did not exclude Hopkins's evidence regarding his use of the land, the statement he made to Denson that he owned the Disputed Property, or his assertion to have paid taxes on the property he acquired from Dobie. This evidence simply did not create a fact issue with respect to Hopkins's claim to have adversely possessed the Disputed Property.

The judgment rendered by the trial court would be the same even if the excluded evidence were considered. Consequently, the exclusion of some of Hopkins's summary-judgment evidence, even if erroneous, could not have caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). Therefore, we need not review each of the trial court's rulings to determine whether it abused its discretion in excluding the proffered evidence. We overrule Hopkins's third issue.

**CONCLUSION**

The trial court properly concluded that there was no genuine issue of material fact with respect to at least one element of each of the theories Hopkins relied on to attempt to establish ownership of the Disputed Property and that the State and Janoe Truck were entitled to judgment as a matter of law. Accordingly, the trial court did not err in granting the State and Janoe Truck's motion for summary judgment on that claim. Because ownership of the Disputed Property is a prerequisite to Hopkins's inverse-condemnation claim against the State arising out of its taking of that property, the trial court correctly rendered summary judgment that Hopkins take nothing by way of his claims against the State. Moreover, the trial court's conclusion that, as a matter of law, Hopkins cannot establish that he owns the Disputed Property is dispositive of his suit to quiet title

22

and trespass-to-try-title action against Janoe Truck. The trial court's order rendering summary judgment against Hopkins on his claims against Janoe Truck was proper. Finding no error, we overrule Hopkins's three issues and affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: November 13, 2009